## SUPREME COURT.

### THEODORE F. HUMPHREY and others agt. CARLTON BROWN and others.

When may *execution* issue against the *person* without an order of the court?

1st. When the action is one in which, from its very nature, and from the facts necessarily stated in the complaint as the cause of action, the plaintiff would necessarily have been entitled to an order of arrest.

2d. When the action is one in which the facts entitling the plaintiff to an order of arrest are not inherent in the cause of action itself, but independent thereof, if an order of arrest has been, in fact, granted and enforced.

3d. Where the right to arrest depends upon facts extrinsic to the cause of action, and no order of arrest has been granted, yet if the complaint sets out acts of fraud, such as would have entitled the party to an order of arrest, and the defendant has not answered.

4th. In an action upon a fraud, where the fraud is established on the trial, and that fact is incorporated in the decision of the court, and made a part of the record.

5th. Where an order of arrest in the action is made and submitted to by the defendant, or, upon controversy, is adjudged to be proper.

When must an order of the court be obtained to authorize execution against the person?

1st. Where it does not appear by the record that the case was one which necessarily justified an arrest, unless an order of the court was previously granted.

2d. Where no facts justifying an arrest are stated in the complaint, and no order of arrest is made.

3d. Where the *facts* justifying an order of arrest are set forth in the complaint (where they are extrinsic of the cause of action itself), as for goods sold (fraudulently contracted for), or money paid (fraudulently obtained), and the defendant suffers default, he does not thereby admit the fraud, so as to conclude him on the question of an execution against his person.

If, however, such allegations of fraud in the complaint are duly verified by affidavit, they operate as the proper foundation upon which an order of arrest might have been granted, and thus the action becomes one in which the defendant might have been arrested. And where in such case execution against the person has issued, of course, against the defendant, he may, on motion to set aside such execution, not as irregularly issued, but as having no foundation in the merits of the case, controvert such facts.

*Albany Special Term, May,* 1859.

THIS was a motion to set aside an execution, issued by the

VOL. XVII.          31

plaintiffs against the persons of the defendants, for irregularity and upon the merits. In October, 1855, the defendants wrote a letter to the plaintiffs, stating that they had shipped to them 52 sides of good slaughter upper leather, in the rough, and that they had drawn upon them at ninety days for $150, which draft they wished them to honor. The defendants accepted the draft, and were ultimately obliged to pay the same. They did not receive the leather until December, 1855, and when received there was a deficiency of 1 hide in number, and 24 sides were of a different description from the representations in the letter. The hides thus sent yielded, after deducting charges, only $72.18, and after crediting the defendants with $34.48, due them upon the plaintiffs' books, there was a balance of $43.34 still due plaintiffs, to recover which, with interest, this action was brought. The summons was in contract claiming this sum. The complaint also claimed this amount, but alleged that the draft was procured by the false and fraudulent representations of the defendants (contained in said letter) of the number and quality of the hides. No order of arrest was obtained. The defendants did not answer, and the plaintiffs took judgment by default, in March, 1859, for $53.73 damages and $20.10 costs. The complaint was verified by one of the plaintiffs. The judgment itself made no allusion to the fraud, but showed personal service of the summons and complaint, the want of an answer, and adjudged that the plaintiffs recover of the defendants the foregoing amount. The roll also contained the summons and complaint, with proof of service. Judgment having been perfected, and an execution against the property of the defendants returned unsatisfied, an execution thereon against the persons of the defendants was issued, without any order from the court or a judge, which the defendants now move to set aside as issued irregularly and without authority, and upon affidavits denying the fraud set forth in the plaintiffs' complaint. The plaintiffs read no affidavits in opposition, but relied upon the judgment roll.

H. SMITH, *for the defendants.*
JAMES EDWARDS, *for the plaintiffs.*

HOGEBOOM, Justice. 1. An execution against the person may be issued if the action be one in which the defendant *might have been* arrested under sections 179 and 181 of the Code. (*Code*, §§ 179, 181.)

2. If the action be one in which, from its very nature, and from the facts necessarily stated in the complaint as the cause of action, the plaintiffs would necessarily have been entitled to an order of arrest, an execution against the person may issue, as a matter of course, because the record shows conclusively that the defendant might have been arrested. It cannot be material in such case whether he was in fact arrested before judgment or not. (*Corwin* agt. *Freeland*, 2 *Seld. Rep.* 566; *Delamater* agt. *Russell*, 4 *How. Pr. Rep.* 234; *Kloppenburg* agt. *Neefus*, 4 *Sandf. S. C. R.* 655.)

3. If the action be one in which the facts entitling the plaintiff to an order of arrest are not inherent in the cause of action itself, but independent thereof, yet if an order of arrest has been in fact granted and enforced, then it is sufficiently established that the action is one in which the defendant might have been (and properly was) arrested under sections 179 and 181 of the Code, and an execution against the person may issue, without an order from the court for that purpose. (*Cheney* agt. *Garbutt*, 5 *How. Pr. Rep.* 467; *Fake* agt. *Edgerton*, 3 *Abbott*, 230; *Corwin* agt. *Freeland*, 2 *Selden*, 566.)

4. It has also been held that in a case where the right to arrest depends upon facts extrinsic to the cause of action, and no order of arrest has been granted, yet if the complaint sets out acts of fraud, such as would have entitled the party to an order of arrest, and the defendant did not answer, the plaintiff was entitled to issue execution against the person without an order of the court for that purpose, upon the ground that it appeared that the right to do so existed, and an application to the court for leave to do so was denied, as unnecessary. (*Cooney* agt. *Van Rensselaer*, 1 *Code Rep.* 38.)

So also in an action upon a fraudulent warranty, the fraud being established on the trial, and that fact incorporated in the decision of the court, it was held that an execution against the person was well issued without an order of the court, it being thus affirmatively established that it was a proper case for an order of arrest. (*Mosher* agt. *Scoville*, 6 *How.* 515.)

On the other hand, it has been held by Mr. Justice CLERKE, that an execution against the person was improperly issued where it did not appear by the record that the case was one which necessarily justified an arrest, unless an order of the court was previously granted. (*Alden* agt. *Sarson*, 4 *Abbott*, 102.)

5. The difficulty arises in determining what are the cases in which the defendant might have been arrested. Where the nature of the action settles that question, the difficulty is, of course, removed. But in other cases it depends on *extrinsic facts*. How are they to be determined? If an order of arrest is made, and submitted to, or, upon controversy, is adjudged to be proper, perhaps the matter should, for the purposes of the action, be regarded as *res adjudicata*, and the execution as justifiably issued without further authority. But if no facts justifying an arrest are stated in the complaint, and no order of arrest is made, how and when is it to be ascertained that the action is one in which the defendant might have been arrested? May the party issue the execution at his peril, and trust to the result of a motion subsequently made to set it aside, or to the result of an action for false imprisonment to determine whether he had in fact authority to issue it? In such case, my impression is that the legislature designed that the fact should, in some way, be established to the satisfaction of the court before the execution was issued, and not left to the mere arbitrary pleasure of the successful party himself. It is a hazardous power, and might be abused. I think the safer practice, and the true construction, is, that the right to issue an execution in such case should receive the previous sanction of the court.

6. Again, in cases where the facts justifying an order of arrest are set forth in the complaint (in cases where such facts

are extrinsic to the cause of action itself), as in actions for goods sold (fraudulently contracted for), or money paid (fraudulently obtained), and the defendant suffers a default, does he thereby *admit* the *fraud*, so as to conclude him on the question of an execution against the person? A *default* admits all the *material* allegations in the complaint, and no others. But the allegations of fraud are not *material* to the cause of action, and I am inclined to think would be struck out on motion, as irrelevant or redundant. Can the defendant, then, by suffering a default, be said to admit them? I incline to think not. Nevertheless, thus contained in the complaint, if they are verified (as in this case they are) by the affidavit of a party, they operate as the proper foundation on which an order of arrest might have been granted, and thus the action becomes one in which the defendant might have been arrested.

7. May the defendant controvert these facts? In other words, may he, by his own or other affidavits, showing a state of facts which negate the apparent fraud arising from the (hitherto) undenied allegations of the complaint, present a new case to the court, and, on motion, ask to have the execution set aside, not as irregularly granted, but as having no just foundation in the merits of the case? I incline to think he may do so; and the case must then be determined in the same way as if it were a motion to vacate or set aside an order of arrest. This seems to be reasonable, and is more in conformity with the spirit of the Code, and the object of the law, and the protection of personal liberty, than any other course which has suggested itself to my mind.

8. The application of these principles to the present case requires the execution to be set aside. It is quite doubtful whether fraud is sufficiently alleged in the complaint to justify an order of arrest. It is stated that on the 22d of October, 1855, the defendants wrote to the plaintiffs that they had, on that day, shipped to them "52 sides of good slaughter upper leather in rough," and they drew on the same day (as also in said letter stated) on the plaintiffs a draft or bill of exchange for $150, ninety days after date. The plaintiffs allege that on the faith

of that statement they accepted the draft, expecting to realize from the proceeds of said leather a sum sufficient to meet the draft, and alleging that such proceeds would have been sufficient for that purpose if of the description mentioned in the letter; but that in fact they did not receive the leather till the 9th of December, that it was not of the quality represented, but that twenty-four sides (out of 51 sides sent) were of *horse* leather of inferior quality, and that the whole was only worth $72.18 after deducting charges thereon. That they only owed the plaintiffs otherwise $34.48, and having paid the draft, as they were liable to do upon their acceptance, were thus left in a deficiency of $43.34, for which, with interest, they brought suit. The summons was in contract and claimed the last mentioned sum. The plaintiffs charge the foregoing representations as falsely and fraudulently made in contracting the aforesaid debt. It will be observed that the complaint does not charge that the leather was shipped to the defendants for *sale*, or as *security* for their acceptance, or that the draft was to be paid out of the proceeds, or that the plaintiffs' letter so stated, or that there was any business or financial *connection* (other than what is to be inferred from their being mentioned in the same letter) between the leather and the draft. Nor was it a single or isolated transaction, for by the plaintiffs' papers it appears that they previously owed the defendants $34.48 on account. The leather was also received before the maturity of the draft. I think, therefore, that the plaintiffs presented a very doubtful case upon their own showing, if they had sought an order of arrest. 1st. Upon the point that the acceptance was procured upon the credit of the shipment of leather; and, 2d. Upon the point that the representations were in fact fraudulent.

But when we come to examine the case as now made by the defendants, the presumption of fraud is effectually removed. The defendants were tanners in Otsego county, and the plaintiffs leather dealers in Albany, and the usual consignees of the defendants, upon whom the defendants were in the habit of drawing without strict regard to the precise value of their pre-

vious shipments, or the precise state of the accounts between them. The transactions between them were very considerable, and the defendants at the period in question were worth $25,000 over and above debts. They had reason to believe, from the statements of their employees and one of the partners, that this number of hides had been set apart for shipment to the plaintiffs, and that they were substantially of the character represented, and they disavow under oath, and I think with sufficient reason, any intent to perpetrate a fraud by the transaction in question. They became subsequently so much embarrassed as to be compelled to make an assignment. They omitted to defend the suit or to deny the allegations of fraud in the complaint, at the time, upon the advice of their attorney that it was unnecessary.

The amount involved upon this motion is insignificant, but the principle involved is of some importance; and it presents questions of practice of some interest. I have, therefore, treated it at greater length than would otherwise seem to be necessary.

The motion to set aside the execution against the persons of the defendants must be granted, with ten dollars costs.